IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NATIONAL ALLIANCE FOR          )
ACCESSIBILITY, INC., and       )
DENISE PAYNE,                  )
                               )
            Plaintiffs,        )
                               )
      v.                       )          1:11-cv-527
                               )
TRIAD HOSPITALITY CORPORATION, )
                               )
            Defendant.         )


## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Plaintiffs National Alliance for Accessibility, Inc., ("NAA") and Denise Payne ("Payne") seek declaratory and injunctive relief against Defendant Triad Hospitality Corporation ("Triad") for alleged violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 (2006 & Supp. 2011) ("ADA"). Before the court is Triad's motion to dismiss Plaintiffs' claims for lack of subject matter jurisdiction and failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. (Doc. 8.) Triad also requests an award of reasonable attorney's fees, pursuant to 42 U.S.C. § 12205 (id.) and moves for sanctions, pursuant to Local Rule 83.4 (Doc. 22). Plaintiffs seek permission to file an affidavit out of time. (Doc. 19.)

For the reasons set forth below, the court will permit the filing of the affidavit, grant Triad's motion to dismiss on the ground that Plaintiffs lack standing, and deny Triad's motion for sanctions and attorney's fees.

I.     **BACKGROUND**

This lawsuit arises out of Payne's overnight stay at Triad's Quality Inn & Suites hotel ("Quality Inn") in Winston-Salem, North Carolina.   Payne, who has cerebral palsy and is paralyzed from the waist down, characterizes herself as an advocate for disabled individuals.   She is also a frequent litigant in federal court.   Since August 2008, she has filed over one-hundred seventy (170) ADA lawsuits, <u>Nat'l Alliance for Accessibility, Inc. v. Waffle House, Inc.</u> (<u>Waffle House I Litig.</u>), No. 5:10-CV-375-FL, 2011 WL 2580679, at *1 (E.D.N.C. Jun. 29, 2011), and although she resides some 750 miles from Winston-Salem in her home state of Florida, at least thirty-two (32) of those suits have been filed in North Carolina.   <u>Id.</u>

In July 2010, Payne's avocation as a representative for disabled individuals brought her to a conference in Raleigh, North Carolina.   At the conclusion of the conference, Payne elected to "travel through North Carolina as she frequently does" and decided to spend the night at the Quality Inn in Winston-Salem.   (Doc. 2 at 3-4.)   As an owner or operator of a place of public accommodation, Triad is responsible for

complying with the ADA. See 42 U.S.C. § 12182. During her one-night stay, Payne identified numerous "architectural barriers" that she claims interfered with her access to and enjoyment of the property, allegedly in violation of the ADA. (Doc. 2 at 4.)

According to Payne, the Quality Inn lacked the ADA's required accommodations for disabled individuals. Her complaint contends that the hotel is unsafe for disabled individuals in that its public restrooms, pool area, parking lot, and at least one guest room fail to comply with the ADA. (Id. at 5-6.) Indeed, her complaint identifies twenty-nine specific violations (id. at 8-11), but she notes that she would "require an inspection of the Defendant's place of public accommodation to determine all of the applicable areas of non-compliance with the [ADA]" (id. at 11-12). And although Payne indicates that she "desires to revisit the Quality Inn & Suites, not only to avail herself of the goods and services available at the property but to assure herself that this property is in compliance with the ADA," she notes that such a visit would be a "futile gesture" until the Property "becomes compliant with the ADA." (Id. at 7-8.)

Based on these alleged violations, Payne, along with the NAA – a Florida-based organization that Payne founded to advance the causes of disabled individuals and a frequent partner in her litigation efforts – filed suit against Triad on July 3, 2011.

According to Plaintiffs' complaint, Triad is in violation of Title III of the ADA by denying disabled individuals full access to the goods, services, privileges, advantages, and/or accommodations of its Quality Inn.

Shortly after Plaintiffs' filing of this suit, Triad moved to dismiss the complaint. (Doc. 8.) Rather than responding to Triad's motion, Plaintiffs moved on September 1, 2011, to extend the time for a response from September 2, 2011, to September 9, 2011. (Doc. 10.) In compliance with Local Rule 6.1(a), Plaintiffs' counsel noted in her motion that she was unsuccessful in consulting with Triad's counsel for assent, though this was because she did not seek to do so until after hours on September 1. (Doc. 24-1 at 1-2.)

Despite Plaintiffs' request for an extension, Plaintiffs did not file a response to Triad's motion to dismiss but waited until September 11, 2011, to make a belated request to again extend the time for a response – this time until September 16, 2011. (Doc. 11.) The new motion represented that the court had "previously granted [Plaintiffs] an extension from September 2 to September 9, 2011," and that she had attempted to contact Triad's counsel who "was not reached as it was after hours." (Id. at 1.) Contrary to the representation, the court had yet to rule on Plaintiffs' initial motion for an extension, and Triad's counsel states that he "never received a voice message,

email, or any other correspondence requesting consultation" on this requested extension. (Doc. 24-1 at 2).

Ultimately, Plaintiffs responded to Triad's motion to dismiss on September 16 (including, oddly, their own "Motion in Opposition to Defendant Triad Hospitality Corporation's Motion to Dismiss," which appears to have no basis in the Federal Rules of Civil Procedure or the local rules of this court). (Docs. 14, 15.) Plaintiffs' brief noted that "Plaintiff's [sic] Affidavit . . . is being filed separately" (Doc. 15 at 13 n.26), but none was filed, and Plaintiffs did not then seek leave of court for any extension, as required by Local Rules 7.3(f) and (g).

Triad filed its reply brief on September 28, 2011, and within hours Plaintiffs filed the draft of an affidavit from Payne in support of her earlier-filed response. The affidavit was unsigned, however, because, it explained, Payne was travelling. (Doc. 18-1 at 2.) Nevertheless, it stated that the purpose of Payne's visit to Winston-Salem on July 25, 2010, was to visit the "NASCAR Museum" located at 1355 Martin Luther King Jr. Drive in Winston-Salem. (Id. at 1.) On October 1, Plaintiffs sought leave of court for the late filing of Payne's affidavit (Doc. 19), and on October 4 Payne submitted a signed version of her affidavit (Doc. 21-1).

Triad determined that the NASCAR Museum Payne claimed to have visited at the provided address – actually named the "Winston Cup Museum" – was closed from June 25-26, 2010 (Doc. 23-1 at 1-2), and moved for sanctions (Doc. 22). Plaintiffs responded with a memorandum (not an affidavit), explaining that the "NASCAR Museum" referred to in the affidavit was actually the "Richard Petty Museum" located at 142 W. Academy Street in Randleman, North Carolina. (Doc. 25 at 1.) When Triad pointed out that the Richard Petty Museum, too, was closed on July 25-26, 2010 (Doc. 26-1 at 2-3), Plaintiffs filed yet another memorandum (not an affidavit), explaining that Payne did, in fact, travel to the Richard Petty Museum but that she was unable to visit because it was closed and attached photos of Payne supposedly visiting the Richard Petty Museum on October 20, 2011. (Doc. 27 at 2.)

The parties' motions will be addressed in turn.

## II.  ANALYSIS

### A.  Plaintiffs' Motion to File Affidavit Late

Plaintiffs move the court to accept Payne's affidavit, which was filed late. Under Local Rules 7.3(f) and (g), when a document is unavailable to be filed at the time a brief is due, the party must timely move for an extension. Here, while Plaintiffs noted in their brief that they would be filing an affidavit of Payne separately (Doc. 15 at 13 n.26), they waited

until after Triad had filed its reply brief to seek permission to file a late affidavit and then filed Payne's executed affidavit several days later (Doc. 21). The reason for the delay, Plaintiffs explained, was that Payne had to be hospitalized for complications from her disability and "due to [the] loss of her home." (Doc. 19 at 1.) The Payne affidavit has become problematic because, as it turns out, it is inaccurate. However, given the severity of Payne's personal situation and because the affidavit ultimately does not change the outcome of this case, the court will consider it in connection with Triad's motion to dismiss.

### B. Motion to Dismiss

Triad moves to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 8.) According to Triad, as several other district courts in North Carolina have found, Plaintiffs lack standing because their complaint fails to identify the requisite "injury in fact." (Doc. 9 at 3.) Payne, Triad contends, lives 750 miles from Winston-Salem, alleges no definitive plans to return to the Quality Inn, and has failed to identify "any real reason or purpose [for] to return[ing] to Winston-Salem." (Id. at 2-3.) Because Payne lacks standing, Triad contends, NAA, whose status is derivative of Payne's, lacks standing as well. (Id. at 7-8.)

Plaintiffs argue that their prior litigation history in North Carolina is irrelevant to the current question of standing. (Doc. 15 at 8-9.) Plaintiffs also argue that the "proximity test" relied upon by Triad for determining standing – a test that, as will be explained in more detail below, weighs factors like a plaintiff's proximity to the defendant's place of business and the definitiveness of a plaintiff's plan to return – is inconsistent with the purposes of Title III litigation. (Id. at 12.) According to Plaintiffs, basing standing on the "proximity test" would essentially grant greater civil rights protection to individuals living closer to defendants who fail to comply with the ADA's requirements than to those living farther away and would create an entire class of defendants – namely hotels, whose visitors normally travel a significant distance for each stay – that would essentially avoid judicial review of their compliance with Title III. (Id. at 13.)

Federal district courts exercise limited jurisdiction. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). "'They possess only that power authorized by Constitution and statute.'" Id. (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). Article III of the Constitution grants federal courts jurisdiction only over "cases and controversies." CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 52 (4th Cir. 2011). For a case or

controversy to be justiciable in federal court, a plaintiff must allege "such a personal stake in the outcome of the controversy as to warrant [her] invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on [her] behalf." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005) (quoting Planned Parenthood of S.C. v. Rose, 361 F.3d 786, 789 (4th Cir. 2004)).

The judicial doctrine of standing is "an integral component of the case or controversy requirement." CGM, 664 F.3d at 52 (citation and internal quotation marks omitted). The party seeking to invoke the federal courts' jurisdiction has the burden of satisfying Article III's standing requirement. Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006). To meet that burden, a plaintiff must demonstrate three elements: (1) that she has suffered an injury in fact that is "concrete and particularized" and "actual or imminent"; (2) that the injury is fairly traceable to the challenged conduct; and (3) that a favorable decision is likely to redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

Where, as here, a plaintiff seeks injunctive relief, the injury in fact element requires a showing of "irreparable injury." City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983). As the Supreme Court has observed, "past wrongs do not in themselves amount to that real and immediate threat of injury

necessary to make out a case or controversy." Id. at 103. Indeed, absent a "sufficient likelihood that [the plaintiff] will again be wronged in a similar way, [the plaintiff] is no more entitled to an injunction than any other citizen." Id. at 111.

Generally, challenges to standing are addressed under Rule 12(b)(1) for lack of subject matter jurisdiction.[1] CGM, 664 F.3d at 52; see also Pitt Cnty. v. Hotels.com, L.P., 553 F.3d 308, 311 (4th Cir. 2009) (noting that the district court re-characterized a defendant's challenge to standing from a motion to dismiss for failure to state a claim under Rule 12(b)(6) to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)). When resolving a motion under Rule 12(b)(1), "'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 647 (4th Cir. 1999) (quoting Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)).

---

[1] Here, Triad has moved to dismiss for lack of standing under Rule 12(b)(1) and Rule 12(b)(6). The Fourth Circuit has explained, however, that Rule 12(b)(6) is generally reserved for challenges to statutory – not constitutional – standing. CGM, 664 F.3d at 51-52. Because Triad's argument addresses Plaintiffs' lack of constitutional standing under Article III, the court construes its motion solely as one challenging the court's subject matter jurisdiction under Rule 12(b)(1).

Plaintiffs contend that absent an injunction from this court, they will suffer an irreparable injury because of Triad's alleged ongoing violations of the ADA. A disabled individual seeking an injunction under the ADA, however, must, like all litigants in federal court, satisfy the case or controversy requirement of Article III. Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011) (en banc). A plaintiff's "profession of an 'inten[t]' to return to the places [she] ha[s] visited before" is generally insufficient to establish standing to seek injunctive relief. Lujan, 504 U.S. at 564 (first alteration in original). "Such 'some day' intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the 'actual or imminent' injury" required by Supreme Court precedent interpreting Article III. Id. Thus, to show likely future harm, Payne must demonstrate an intention to return to the Quality Inn. Norkunas v. Park Road Shopping Ctr., Inc., 777 F. Supp. 2d 998, 1001 (W.D.N.C. 2011) (citing Lujan, 504 U.S. at 564).

For her part, Payne alleges that she "plans to return to the [Quality Inn] to avail herself of the goods and services offered to the public at the property in a manner equal to that offered to individuals who are not disabled, once the Defendant has eliminated the violations." (Doc. 2 at 4.) In addition,

she alleges that she "frequently" travels through North Carolina (id. at 3), although the regularity of her travels and the locations of her visits within the state are left unspecified. In her only executed affidavit, Payne stated that she (1) has been travelling "to North Carolina for a few years," (2) goes to Winston-Salem in general and the Quality Inn in particular because she is "a huge fan of NASCAR" and the Quality Inn is "nearby" to the "NASCAR Museum located at 1355 Martin Luther King Jr. Drive, Winston-Salem," and (3) that she has an annual pass for that museum and visited it July 25, 2010 (when she visited an advocacy group on Winston-Salem).[2] (Doc. 18-1 at 1-2.) She also stated her intention to visit the museum in October 2011, noting her "specific intention" to stay at the Quality Inn. (Id.)

Of course, very little of this turns out to be accurate. Payne now contends that the museum to which she meant to refer is the Richard Petty Museum, located at 142 W. Academy Street in Randleman, North Carolina. (Doc. 25 at 1.) Unclear from this change of fact is how a small museum located some 44 miles from Winston-Salem attracts Payne to the vicinity of the Quality Inn. Nevertheless, she contends that these representations

---

[2] The address Payne provides in her unsigned affidavit is to the Winston Cup Museum in Winston-Salem. The Winston Cup Museum, http://winstoncupmuseum.com/map.html (last visited Mar. 22, 2012).

demonstrate that she is a frequent traveler to North Carolina.[3] (Doc. 15 at 7.)

In assessing the plausibility of a plaintiff's claim that she is likely to return to the site of the discrimination (at least once the barriers to her return are removed), courts consider a number of factors, including: "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel." Norkunas, 777 F. Supp. 2d at 1002; Access 4 All, Inc. v. Absecon Hospitality Corp., Civ. A. No. 04-6060, 2006 WL 3109966, at *6 (D.N.J. Oct. 30, 2006); see also Camarillo v. Carrols Corp., 518 F.3d 153, 158 (2d Cir. 2008) (per curiam) (finding standing where a disabled plaintiff's home was near the defendants' businesses and her past patronage of defendants' stores indicated she was likely to encounter discrimination again). Each will be addressed in turn.

### 1. Proximity to Defendant's Business

Plaintiffs contend that evaluating the plausibility of Payne's likelihood of suffering future injury based on her

---

[3] Plaintiffs' brief also represents that at the time of its filing Payne had plans to visit North Carolina in September, October, and December of 2011 and that the NAA has opened three branches in unspecified locations in the state. (Doc. 15 at 7.) The evidentiary assertions contained in Plaintiffs' brief, however, contain no reference to any part of the official record in the case, in violation of Local Rule 7.2(a)(2).

proximity to Triad's hotel is inappropriate because this factor
would always favor hotels, whose guests presumably travel at
least some distance from home for their stays. (Doc. 15 at 13.)
While there is no question that a plaintiff's proximity to a
defendant's place of business is generally probative of a
defendant's likelihood of returning to the site of past
discrimination, see Camarillo, 518 F.3d at 158, when the place
of business is a hotel, Payne is right to point out that the
proximity factor is less important, see Absecon Hospitality,
2006 WL 3109966, at *6. A hotel, after all, caters to
individuals who are travelling away from their homes. Thus, the
fact that plaintiff resides some 750 miles from the Quality Inn
in Winston-Salem is less probative of her claim that she is
likely to return. However, here Payne's justification for
allegedly returning to the hotel is called into substantial
doubt by the inaccurate information contained in her affidavit.
While she initially claimed that she stayed at the Quality Inn
because of its proximity to the "NASCAR Museum," she now
concedes that the museum she actually attempted to visit was the
Richard Petty museum some 44 miles away. (Doc. 25 at 1.) Thus,
on this record, this factor does not favor Payne.

## 2. Plaintiffs' Past Patronage

Courts have found that a plaintiff's past patronage of a
defendant's place of business is probative of a likelihood to

return.  See Judy v. Arcade L.P., Civ. A. No. RDB 10-607, 2011 WL 345867, at *4 (D. Md. Feb. 2, 2011).  A single prior visit to a defendant's place of business, for example, is not sufficient to demonstrate that past patronage makes it likely the plaintiff will return.  Id.  "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by continuing, present adverse effect."  Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd., No. Civ. A. 3:05-CV-1307-G, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005) (second alternation in original) (quoting Lyons, 461 U.S. at 102).  Here, the complaint indicates that Payne made only one visit to the Quality Inn in Winston-Salem – the overnight stay that was the precursor to this litigation.  That single visit, even in the context of an ADA lawsuit against a hotel, is insufficient to bolster Payne's standing argument.  See id.

### 3.  Definitiveness of Plans to Return

Courts also consider the definitiveness of a plaintiff's plans to return to the defendant's place of business.  Nat'l Alliance for Accessibility, Inc. v. Waffle House, Inc. (Waffle House II Litig.), No. 5:10-CV-385-D, 2011 WL 4544017, at *2 (E.D.N.C. Sept. 29, 2011).  Although a plaintiff does not need to engage in the "futile gesture" of re-visiting a place of business that is unsafe for disabled individuals, she must still

prove that she would visit the business in the imminent future but for those safety barriers. <u>Steger v. Franco, Inc.</u>, 228 F.3d 889, 892-93 (8th Cir. 2000). For standing purposes, such an intent must exist at the time the complaint is filed. <u>Id.</u> at 892 (noting that the relevant facts for standing purposes are those that exist at the time a complaint is filed).

Here, the record fails to indicate that Plaintiffs have any special interest in the Quality Inn's goods, services, or accommodations. In fact, besides Payne's indefinite representation that she would like to return to the hotel, her only stated interest in visiting the Quality Inn is to test its compliance with the ADA.[4] Courts are split over whether a plaintiff can demonstrate a concrete interest in returning to a business based on assessing its compliance with the ADA. <u>Compare</u> <u>Norkunas</u>, 777 F. Supp. 2d at 1005 ("[T]he law makes clear that a Title III plaintiff cannot use her status as a tester to satisfy the standing requirements where she would not have standing otherwise."), <u>and</u> <u>Judy v. Pingue</u>, No. 2:08-CV-859, 2009 WL 4261389, at *5 (S.D. Ohio Nov. 25, 2009) ("Any tester status that [a plaintiff] might possess does not confer standing to seek prospective relief where he cannot show a reasonable likelihood of returning to [the defendant's]

---

[4] In ADA litigation, a "tester" is an individual who tests a location's compliance with federal disability statutes. <u>Judy v. Pingue</u>, No. 2:08-CV-859, 2009 WL 4261389, at *5 (S.D. Ohio Nov. 25, 2009).

property."), and <u>Harris v. Stonecrest Care Auto Ctr., LLC</u>, 472 F. Supp. 2d 1208, 1219-20 (S.D. Cal. 2007) ("Where [Title III] litigation is the only reason for a plaintiff's visit to a particular local establishment, once litigation is complete it is unlikely such a plaintiff will return to avail himself of the business' goods or services, or to visit the local business for any other reason."), with <u>Absecon Hospitality</u>, 2006 WL 3109966, at *7 ("[T]he motive for a plaintiff to return to a particular place of public accommodation is not a factor typically considered by the Court.").

Yet even assuming, without deciding, that the desire to test is a sufficient basis to confer standing, Payne has not identified a concrete desire to test the Quality Inn in this case. In <u>Disabled Patriots of Am., Inc. v. Fu</u>, No. 3:08CV542, 2009 WL 1470687 (W.D.N.C. May 26, 2009), the court found standing based, in part, on the plaintiff's representation that he planned to visit the defendant's place of business <u>annually</u> to assess its compliance with the ADA. <u>Id.</u> at *3. In <u>Absecon Hospitality</u>, meanwhile, the court found Article III standing where a plaintiff expressed a desire to test the defendant's compliance with the ADA – a claim the court found credible given that the plaintiff's mother lived relatively near the defendant's hotel and the plaintiff also frequented nearby casinos. 2006 WL 3109966, at *7. In this case, Payne has made

only vague representations that she would like to return to the Quality Inn and has identified no concrete plans to do so on a periodic basis. Further, she has alleged no familial or business ties to the vicinity that would make it more likely that she would visit the Quality Inn in the future. Accordingly, this factor weighs against finding that she is likely to return and suffer future harm.

### 4. Definitiveness of Plans for Nearby Travels

Finally, courts look to whether a plaintiff has any definitive plans to return to the nearby area. Waffle House II Litig., 2011 WL 4544017, at *2. Payne represents that she frequently visits North Carolina and that her advocacy group, the NAA, is planning to open branches in Raleigh and Asheville. Payne also expresses an interest in visiting a NASCAR Museum in the area, although she acknowledges the museum is actually in Randleman, North Carolina. (Doc. 25 at 1.) None of these representations adds weight to Payne's standing argument. North Carolina's capital city, Raleigh, is 100 miles from Winston-Salem, and Asheville is 150 miles away. Even Randleman is approximately 44 miles from Winston-Salem. (Doc. 25 at 1.) Furthermore, nothing in the record indicates how often Payne visits these locations. As a result, the record is devoid of any concrete representation that Payne is likely to return to the Winston-Salem area.

Absent a plausible claim that she will return to the site of the alleged discrimination, Payne has failed to make the requisite showing that she is sufficiently likely to suffer future harm to invoke the protection of the federal courts' injunctive power.  Consequently, Payne lacks standing to seek an injunction against Triad for the alleged violations at its Quality Inn.  Triad's motion to dismiss under Rule 12(b)(1) (Doc. 8), therefore, will be granted as to Plaintiff Payne.

Plaintiffs fail to make a separate argument concerning the NAA's basis for standing, but the complaint appears to base the NAA's standing on the fact that Payne is the founding member of the organization, that the NAA is planning to open locations in North Carolina, and that one-quarter of the organization's members reside in the state.  Generally, in the absence of a direct injury to an organization, it will only have standing if it can show that (1) at least one of its members would have standing to sue as an individual, (2) the interests at stake in the litigation are germane to the organization's purpose, and (3) neither the claim made nor the relief requested requires the participation of the individual members in the suit.  Retail Indus. Leaders Ass'n v. Fielder, 475 F.3d 180, 186 (4th Cir. 2007).  Such "associational standing" is satisfied even where just one of the association's members would have standing.  Warth v. Seldin, 422 U.S. 490, 511 (1975).

Here, the only member of the NAA who is identified specifically in the record is Payne. As explained above, she lacks standing to sue in her own right. As a result, the NAA has failed the first prong of the associational standing test, and Triad's motion to dismiss pursuant to Rule 12(b)(1) (Doc. 8) will be granted as to Plaintiff NAA.

## C. Triad's Motion for Attorney's Fees

Triad has moved for the reasonable attorney's fees it has incurred in defending against Plaintiffs' complaint. (Doc. 8.) Although American courts follow a "general practice of not awarding fees to a prevailing party absent explicit statutory authority," Key Tronic Corp. v. United States, 511 U.S. 809, 819 (1994), the "prevailing party" in an ADA action may be awarded attorney's fees in the court's discretion, 42 U.S.C. § 12205 (providing that "[i]n any action . . . commenced pursuant to this chapter, the court . . ., in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses and costs").

On its face, section 12205 does not establish differing standards for awarding attorney's fees depending on whether the defendant or the plaintiff is the "prevailing party," but courts have held that "attorney's fees should be granted to a defendant in a civil rights action only 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without

foundation.'" Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1154 (9th Cir. 1997) (quoting Christianburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978)); see also Goldstein v. Costco Wholesale Corp., 337 F. Supp. 2d 771, 774 (E.D. Va. 2004). "An action is frivolous if it lacks an arguable basis in law or in fact, though it need not be brought in bad faith." Peters v. Winco Foods, Inc., 320 F. Supp. 2d 1035, 1037 (E.D. Cal. 2004).

Assuming that Triad is the "prevailing party" for ADA purposes,[5] the court in its discretion will decline to award attorney's fees. Triad's boilerplate request is contained in its "Conclusion" of its brief and fails to separately articulate the relevant facts to indicate why an award of attorney's fees is appropriate. See Gomoll v. Landura Mgmt. Co., No. 1:04CV857, 2005 WL 1230788, at *2 & n.1 (M.D.N.C. Apr. 28, 2005) (holding that a plaintiff failed to state a claim to relief where he "fail[ed] to raise any meaningful argument" in favor of his claim). Moreover, there is no indication that Plaintiffs' claim is frivolous, unreasonable, or without a foundation in law. Therefore, Triad's motion for attorney's fees will be denied.

---

[5] The success of Triad's motion to dismiss based on Plaintiffs' lack of standing appears sufficient to warrant the assumption that it is the "prevailing party." See Citizens for a Better Env't v. Steel Co., 230 F.3d 923, 926 (7th Cir. 2000) ("[A] court may lack authority to resolve the merits of a claim [due to a party's lack of Article III standing] yet have jurisdiction to award costs and attorneys' fees to the prevailing party [on a motion to dismiss].").

### D. Motion for Sanctions

Triad additionally moves for sanctions pursuant to Local Rule 83.4, which permits the court to impose sanctions for a violation of the district's local rules. Triad points to Plaintiffs' misstatement to the court that it had granted an extension of time within which to file Plaintiffs' response to Triad's motion to dismiss, Plaintiffs' failure to reasonably attempt to consult with Triad about Plaintiffs' two requested extensions, Plaintiffs' belated filing of Payne's affidavit after Triad's reply brief was filed (which Triad characterizes as an improper surreply) that contained incorrect information, and Plaintiffs' failure to attach copies of unreported decisions to its response to the motion to dismiss as required by Local Rules 7.2(c) and (d). According to Triad, these actions have prejudiced Triad by increasing its litigation costs and created the potential of misleading the court. Triad seeks dismissal of Plaintiffs' complaint and an award of its attorneys' fees and costs incurred in preparing its motion for sanctions, although no statement of such costs and fees is provided. (Doc. 22.)

Plaintiffs object to Triad's characterization of the facts. They contend that it does not matter that the Richard Petty Museum was closed on the date of Payne's visit because the important point is that the museum "draws Ms. Payne repeatedly to the area on her traveling route through North Carolina"

22

regardless of whether it happens to be closed on a particular day. (Doc. 27 at 3.) Plaintiffs also argue that the listing of a Winston-Salem address for the "NASCAR Museum" in Payne's affidavit was "minor" and ultimately was corrected when the matter was brought to Plaintiffs' attention. (Doc. 27 at 4-5.) As to the timing of the Payne affidavit, Plaintiffs contend it was late because Payne was hospitalized, lost her home, and was traveling with friends. (Doc. 19.) Plaintiffs do not respond as to their September 11 misstatements that the court had granted an extension from September 2, 2011, to September 9, 2011, to respond to Triad's motion to dismiss.

Local Rule 83.4 permits the court to impose sanctions against an attorney or party that "fails to comply with a local rule." Local Rule 83.4(a). Whether to impose sanctions is left to the court's discretion, and the court may consider whether a failure to comply "was substantially justified or whether other circumstances make the imposition of sanctions inappropriate." Id. at 83.4(b). When the court elects to impose sanctions, it may, among other things, dismiss an action or impose costs, including attorneys' fees, on the offending party. Id. at 83.4(a)(3)-(4).

Plaintiffs' missteps in this case bear all the hallmarks of litigants and counsel attempting to handle too many cases based on the resources they are devoting to them. Plaintiffs' counsel

23

admitted as much with her requested extensions, noting in each instance that she had "several things due at the same time." (Docs. 10, 11.) The fact that both extensions were not sought until well after hours on the eve of the deadline further underscores the problem. Payne's affidavit, which was based on facts that were known to Plaintiffs at the time suit was filed, clearly should have been filed with Plaintiffs' response brief. Had the affidavit truly been unavailable at that time, Local Rules 7.3(f) and (g) require that the party opposing a motion timely file for an extension of time. Such a motion would have tolled Triad's deadline for filing a reply. Local Rule 7.3(g). And while Payne's effort to root out alleged discrimination is laudable, her failure to be available to counsel for the completion of her affidavit based in part on her travelling schedule (see Doc. 19) contributed to the problems here. Plaintiffs' counsel's misstatement that a previous extension for her response had been granted, while perhaps an oversight, is likely further indication that Plaintiffs are under-resourced for their attempted caseload.

There is no doubt that Plaintiffs' late filing of Payne's inaccurate affidavit after Triad's response caused Triad to have to respond to the new facts generated by the affidavit. This led to a flurry of briefs and attempts by Plaintiffs to set forth accurate facts. Contrary to Plaintiffs' characterization,

the location of the museum was an important fact in the analysis of Plaintiffs' standing, not a "minor" mistake. In the end, while Triad's initial response would have been unnecessary had Plaintiffs followed Local Rules 7.3 (f) and (g) by requesting an extension, the subsequent briefing resulted primarily from Plaintiffs' failure to get the facts straight, not only in Payne's affidavit but in Plaintiffs' two subsequent filings as well. This demonstrates at least substantial inadvertence, yet the court cannot say it amounted to an intentional misrepresentation.

On this record, having found that Plaintiffs' case should be dismissed, the court declines to award any sanctions. It does so with a cautionary note, however. A good lawyer is usually a busy lawyer. But with some 170 or more similar actions having been filed, several of which are in this district, Plaintiffs and counsel are cautioned to carefully evaluate both the resources they are devoting to their cases and the facts they claim support them. The local rules of this district are adopted to impose order on the process and to reduce unnecessary expense, and they will be applied to that end.

## III. CONCLUSION

For the reasons set forth above, therefore,

IT IS ORDERED that Plaintiffs' motion to permit the late filing of Payne's affidavit (Doc. 19) is GRANTED, Defendant Triad's motion to dismiss (Doc. 8) is GRANTED, Triad's request for attorney's fees pursuant to 42 U.S.C. § 12205 is DENIED, and Triad's motion for sanctions (Doc. 22) is DENIED.

/s/   Thomas D. Schroeder<br>
United States District Judge

March 23, 2012